IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALLEN BAIER,**

      **Plaintiff,**

  v.                                 **Civil Action 2:20-cv-5380**
                                        **Judge Michael H. Watson**
                                        **Magistrate Judge Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Allen Baier, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed his applications for DIB and SSI on June 28, 2017, alleging that he was disabled beginning April 26, 2015. (Tr. 187–95). Plaintiff later amended his alleged onset date to July 13, 2016. (Tr. 211). After his applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on November 14, 2019, before issuing a decision denying Plaintiff's applications on January 15, 2020. (Tr. 35–81, 12–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6). Plaintiff filed this action on October 14, 2020 (Doc. 1), and the Commissioner filed the administrative record on April 19, 2021 (Doc. 14). Shortly thereafter, Plaintiff filed his Statement of Errors (Doc. 17) and the Commissioner filed his Opposition (Doc. 18). Plaintiff filed his reply (Doc. 19), and this matter is now ripe for review.

A. **Relevant Hearing Testimony**

The ALJ summarized Plaintiff's November 14, 2019, hearing testimony as follows: "[Plaintiff] testified that he cannot work because he cannot walk far and that his foot feels like it is on fire. He also said that he has weakness on his left side and was in pain just sitting in his seat during the hearing." (Tr. 22–23).

B. **Relevant Medical History**

Because Plaintiff attacks only the ALJ's treatment of his physical impairments, the Court focuses on the same. The ALJ summarized Plaintiff's medical records and symptoms related to his physical impairments:

> Regarding the [Plaintiff]'s shoulder pain, the record shows that the [Plaintiff] was diagnosed with degenerative joint disease and underwent a left shoulder arthroscopy, injections and total arthroplasty (Exs. 27F/6, 27F/27-31, 29F/10). However, by July 2017, the [Plaintiff] had normal strength in his upper extremities (Ex. 18F/16). In August 2017, the [Plaintiff] was discharged from physical therapy secondary to noncompliance with attendance, as he had only visited twice (Ex. 27F/55). In September 2017, an examination of the [Plaintiff]'s right shoulder was normal, with only mild spasticity and mild weakness in his left upper extremities (Ex. 22F/29). In November 2018 through April 2019, the [Plaintiff] underwent more rounds of physical therapy (Ex. 17F). In January 2019, the [Plaintiff]'s shoulder active range of motion was within functional limits bilaterally (Ex. 17F/46). In April 2019, the [Plaintiff] complained of pain with overhead motion (Ex. 23F/3). Radiographs performed at this time showed a slight progression of the early rim osteophyte formation, but without a progression of his acromioclavicular joint arthrosis (Ex. 23F/4). However, the physical examination of the [Plaintiff]'s shoulder indicated he had normal tone and bulk; forward elevation of 155 degrees on the right and 145 degrees on the left, but with positive pain at the end of the range of motion on the left (*Id.*). Even so, the examining physician, Damian Rispoli, M.D., noted that there seemed to be a mismatch between the radiographic findings, the clinical findings and the [Plaintiff]'s perception (Ex. 23F/5). In May 2019, an MRI of the [Plaintiff]'s left Shoulder showed moderate degenerative joint disease of the acromioclavicular joint and a complex tear of the labrum both anteriorly and posteriorly in the setting of osteoarthritis of the glenohumeral joint (Ex. 24F/6). After the most recent surgery, the [Plaintiff]'s shoulder was noted to be healing well with a general range of motion without pain (Ex. 29F/14).
>
> Regarding his left foot problems, the [Plaintiff] was noted to have left foot dystonia; however, his left foot did much better with a Botox injection (Ex. 18F/9). Furthermore, he had a normal gait and normal coordination (Ex. 18F/10). Recently,

in July 2019, he was able to walk on his toes, heels and in a tandem without difficulty, although he had decreased sensation in glove and stocking pattern (Ex. 18F/17). However, by August 2019, he had balance difficulty and used a cane for ambulation with chronic left-sided weakness (Ex. 25F/18).

Regarding the [Plaintiff]'s alleged neck pain, x-rays of the [Plaintiff]'s cervical spine showed discogenic degenerative changes from C4 through C7 (Ex. 27F/28). However, in July 2019, a musculoskeletal and motor examination report noted that he had normal tone with no atrophy or fasciculations, no abnormal movements, no pronator drift, no drift and no cogwheeling (Ex. 18F/16).

Regarding the [Plaintiff]'s alleged stroke and related symptoms, the record shows the [Plaintiff] has a history of a cerebrovascular accident 1F/4). The [Plaintiff] also was diagnosed with neuropathy that was related to this condition (Ex. 2F/55-56). The [Plaintiff] has a left homonymous inferior quadrant loss secondary to stroke, but he still had 20/20 vision (Exs. 3F/1, 20F/1). However, by the physical consultative examination in October 2017, most of the [Plaintiff]'s symptoms ha[ve] resolved other than problems with his left ankle, for which he used a Velcro brace (Ex. 12F/5). Even so, the [Plaintiff] continued to have mild spasticity on his left side with mild weakness, although Botox injections helped (Exs. 28F/2, 22F/21-23, 25F/13). Additionally, a computed tomography in August 2019 had no acute findings, and there was no evidence of hemodynamically significant stenosis in the [Plaintiff]'s legs, bilaterally, during the same month (Exs. 24F, 26F/4).

Regarding the [Plaintiff]'s alleged blood sugar control problems and related symptoms, the record shows that the [Plaintiff] received treatment for diabetes mellitus (Ex. 2F/1). However, by June 2019, the [Plaintiff]'s diabetes was well-controlled (Ex. 23F/11).

Regarding the [Plaintiff]'s alleged breathing difficulty, a pulmonary function test indicated that the [Plaintiff] had moderate restricted lung disease with no significant obstructive lung disease (Ex. 27F/18). However, a six-minute walk test showed mild perceived dyspnea at rest that worsened to a moderate degree, but without significant oxygen desaturation during ambulation (Ex. 27F/19).

(Tr. 23–24).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2020, and that he has not engaged in substantial gainful employment since July 13, 2016, the amended alleged onset date of disability. (Tr. 17). The ALJ also determined that Plaintiff has the following severe impairments: status-post right basal ganglia bleed, status-post cerebrovascular

3

accident with neuropathy of the left lower extremity and dystonia of the left great toe, diabetes mellitus, degenerative disc disease of the cervical spine, mild left foot drop, left homonymous inferior quadrant loss secondary to stroke with 20/20 vision, moderate restricted lung disease with no significant obstructive lung disease, left shoulder degenerative joint disease status-post arthroscopy and total arthroplasty, and obesity.  (Tr. 17–18).  Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (Tr. 20).

>The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:
>
>After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: The [Plaintiff] can perform all posturals occasionally, but can never climb ladders, ropes or scaffolds. The [Plaintiff]'s work should not require greater than occasional exposure to concentrated levels of extreme temperatures, humidity, vibrations, or pulmonary irritants; and should not require exposure to hazards, such as unprotected heights or dangerous moving mechanical parts. The [Plaintiff]'s work should require no greater than frequent pushing and pulling with the left upper extremity; and only occasional operation of foot controls with the left lower extremity. The [Plaintiff]'s work should not require greater than occasional overhead reaching with the left upper extremity. His work should not require greater than four hours of standing and/or walking in an eight-hour workday. The [Plaintiff]'s work must allow for the use of an assistive device when ambulating; however, the [Plaintiff] can carry up to his exertional limits in the contra lateral hand.

 (Tr. 22).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they are inconsistent with the record.  Specifically, she found that the record does not support the alleged loss of functioning to the extent alleged.  (Tr. 22).  After considering the evidence of record, the assessed RFC incorporates Plaintiff's limitations that are supported by the evidence.  (Tr. 24).

Relying on the vocational expert's testimony, the ALJ determined that Plaintiff is capable of performing his past relevant work as a shipping check.  (Tr. 26).  And relying on that same

4

testimony, the ALJ further determined that given his age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as an information clerk, furniture rental clerk or a para-mutual ticket cashier. (Tr. 27-28). The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 13, 2016. (Tr. 34).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.  DISCUSSION

In his sole assignment of error, Plaintiff alleges "[t]he ALJ's RFC determination is unsupported by substantial evidence because she failed to properly evaluate the opinion[s] of treating medical source Augusto Fojas, M.D." (Doc. 17 at 12–18). In opposition, Defendant argues that the ALJ appropriately considered the relevant objective medical information, including Dr. Fojas's opinions, in crafting Plaintiff's RFC. (*See generally* Doc. 18). Therefore, says

Defendant, Plaintiff has "failed to show any reversible error on the part of the ALJ." (*Id*. at 3). The Undersigned agrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a case file. *Id*. Because Plaintiff's application was filed after March 27, 2017, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Those regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how she evaluated the other factors, she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same

6

issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors[.]" §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id*.

Plaintiff argues that "the ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinion of treating medical source Dr. Fojas according to the regulations and caselaw." (Doc. 17 at 13). Specifically, he argues that the ALJ conducted a "highly selective" view of the medical evidence, only highlighting evidence that supported her position. (*Id*. at 15). This "cherry-picking" says Plaintiff, led to the ALJ improperly evaluating Dr. Fojas's opinions. (*Id*.).

Dr. Fojas treated Plaintiff 3-5 times a year for 4 years and 3 months. (Doc. 17 at 8 (citing Tr. 363)). During this time, Dr. Fojas completed two medical source statements, one in June 2017 and one in July 2018. (*See* Tr. 364–66, 505). Upon review of these opinions, the ALJ found that they were "not persuasive, as [they were] [] not fully consistent with the overall case record that demonstrates [] [Plaintiff]'s condition improved substantially." (Tr. 24–25). More specifically, she explained:

> [Dr.] Fojas, M.D., opined that the claimant is not capable of even sedentary exertional work due to his physical impairments (Ex. 4F). He supported his opinion by stating that the claimant had constant left-sided pain, dizziness, fatigue and poor balance (Ex. 4F/1). However, the undersigned finds that the opinion from Dr. Fojas is not persuasive, as it is not fully consistent with the overall case record that demonstrates the claimant's condition improved substantially. Recently, in July 2019, he was able to walk on his toes, heels and in a tandem without difficulty, although he had decreased sensation in glove and stocking pattern (Ex. 18F/17).

7

> Furthermore, a computed tomography in August 2019 had no acute findings, and there was no evidence of hemodynamically significant stenosis in the [Plaintiff]'s legs, bilaterally, during the same month (Exs. 24F, 26F/4). Doctor Fojas also issued a statement of disability wherein he said that the [Plaintiff] gets winded easily and cannot sit more than fifteen minutes without having his feet elevated; that both of the [Plaintiff]'s hands shake and hurt from arthritis; that he has right-sided tennis elbow and left-sided spasticity with weakness in his bilateral arms; and that he has weak ankles that roll easily with bilateral neuropathy in his feet, supporting his opinion by noting that the [Plaintiff] has a history of basal ganglia bleed (Ex. 15/2). However, this opinion is also not consistent with the most recent evidence as stated above. Therefore, the undersigned also finds this opinion by Dr. Fojas unpersuasive.

(*Id.*).

At base, the Court finds Plaintiff's argument that the ALJ "cherry-picked" medical evidence without merit. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached."). As Defendant correctly argues, Plaintiff's argument here is unavailing as such an "'allegation is seldom successful because crediting it would require a court to re-weigh record evidence.'" (Doc. 18 at 7–8 (quoting *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014)). Ultimately, there was ample evidence in the record showing Plaintiff's condition improved substantially, so it was acceptable for the ALJ to discount Dr. Fojas's opinions.

To begin, the ALJ found Plaintiff saw improvement in his shoulder impairment. (*See* Tr. 23 (citing Tr. 706 (showing that Plaintiff's right shoulder was normal, and his left shoulder displayed only minor weakness and spasticity); Tr. 720 (radiographs from 2019 showing Plaintiff displayed well-maintained joint space and no progression of joint arthritis); Tr. 738, 862 (showing Plaintiff's shoulder was healing well without pain, following his May 2019 surgery on his torn labrum))). Similarly, the ALJ found that the record showed Plaintiff had seen significant improvement in his left foot and neck impairments. (*See* Tr. 23 (citing Tr. 650 (showing that

8

Plaintiff's left foot dystonia was doing "much better" with Botox treatment); Tr. 651, 720, 774, 777, 788, 856 (showing Plaintiff displayed a normal gait from 2017 through 2019); Tr. 657 (a musculoskeletal and motor examination report from 2019 showing Plaintiff had normal tone with no atrophy, abnormal muscle movement, or twitches and normal coordination, strength, and reflexes in both arms); Tr. 733–40 (a CT scan from 2019 showing no acute findings and no evidence of narrowing that would impede blood flow to Plaintiff's legs))).

The ALJ explicitly stated that she found Dr. Fojas's opinions not completely supported by, or consistent with, the administrative record and then described the evidence that led her to that conclusion. Particularly, she found Dr. Fojas's opinions were lacking supportability given that Plaintiff saw substantial improvement in his impairments. (Tr. 23). In this way, the ALJ explained how the supportability and consistency factors were considered. That is all the regulations require. *See* 20 C.F.R. § 416.920c(b)(2). While Plaintiff may argue the evidence supports a different conclusion, that belief is of no consequence. Even where the evidence may have supported a different conclusion, so long as the ALJ's decision is supported by substantial evidence, it must be affirmed. *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007). And that is the case here.

While Plaintiff only alleges one statement of error—that the ALJ erred when she found Dr. Fojas's opinions were inconsistent with the record—he does make two subsidiary arguments. In support of his "cherry-picking argument," Plaintiff alleges that "[c]ompletely absent from the ALJ's decision are any treatment notes from one of Plaintiff's physicians, Dr. Kissinger." (Doc. 17 at 15). Plaintiff also briefly argues "[t]he failure of the ALJ to properly evaluate the opinions of Dr. Fojas is harmful because he proffered disabling limitations." (*Id*. at 17–18). These arguments also lack merit.

9

First, Plaintiff's assertion that ALJ ignored treatment notes from Dr. Kissinger when she found his impairments had substantially improved, fails as a matter of law and fact. As Defendant correctly argues, "it is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (Doc. 18 at 8 (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) and citing *Leeson v. Comm'r of Soc. Sec.*, No. 2:14-cv-335, 2015 WL 5358891, at *14 (S.D. Ohio Sept. 14, 2015))). More importantly, the ALJ did reference treatment notes provided by Dr. Kissinger in her opinion—she just did not specifically identify Dr. Kissinger. (*See* Tr. 18 (citing Tr. 742 (examination by Dr. Kissinger, during which Plaintiff refused stain therapy)); *see also* Tr. 23 (citing Tr. 758 (a different examination by Dr. Kissinger, where Plaintiff had difficulty balancing and used a cane))). From the Undersigned's review, there is nothing in these records that undermines the ALJ's RFC or her dismissal of Dr. Fojas's opinions. While Dr. Kissinger's opinion may support the limitations opined by Dr. Fojas, that alone does not mean the ALJ's RFC analysis is not supported by substantial evidence. Indeed, it is the ALJ's responsibility to resolve conflicting evidence. *Gebhart v. Comm'r of Soc. Sec.*, No. 2:19-CV-3066, 2020 WL 913617 (S.D. Ohio Feb. 26, 2020), report and recommendation adopted, No. 2:19-CV-3066, 2020 WL 1289737 (S.D. Ohio Mar. 18, 2020). Here, the ALJ evaluated all the evidence of record and found the weight of evidence did not support the limitations opined by either Dr. Fojas or Dr. Kissinger. (Tr. 23). From review of the ALJ's decision, the Undersigned sees no error.

Lastly, and briefly, Plaintiff asserts that "[t]he failure of the ALJ to properly evaluate the opinions of Dr. Fojas is harmful because he proffered disabling limitations." (Doc. 17 at 17–18). Plaintiff highlights a number of the limitations opined by Dr. Fojas and argues that they conflict with those included in Plaintiff's RFC. (*Id*. at 17). Specifically, Plaintiff takes issue with the

10

determination that he could perform a range of light work. (*Id*.).

Again, Plaintiff has failed to show any error—reversible or otherwise. In crafting Plaintiff's RFC, the ALJ found the opinions of Drs. Darr and Green "somewhat persuasive." (*See* Tr. 23–24 (citing Tr. 111–14, 480)). She found the limitations opined by Dr. Fojas, however, unpersuasive. (Tr. 23). While the ALJ evaluated and weighed each of these opinions, she ultimately issued an RFC that was less restrictive, given the record of "substantial improvement" in Plaintiff's impairments as detailed above. Importantly, there is nothing in the governing regulations indicating that an RFC determination is substantially supported only if it is consistent with a medical opinion. Indeed, the Sixth Circuit Court of Appeals has rejected the argument that an RFC determination cannot be supported by substantial evidence unless it is consistent with a medical opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence.").

Ultimately, Plaintiff asks this Court to re-weigh the evidence relating to his impairments and decide the outcome of this case differently. This request is impermissible under the substantial evidence standard of review. The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Young v. Sec'y of Health and Human Servs.*, 787 F. 2d 1064, 1066 (6th Cir. 1986). Accordingly, because the ALJ's RFC determination is supported by substantial evidence, Plaintiff's assignment of error has no merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: September 21, 2021             /s/ Kimberly A. Jolson
                                     KIMBERLY A. JOLSON
                                     UNITED STATES MAGISTRATE JUDGE